The principal question for decision in this case is, whether the company has a remedy against a delinquent subscriber for stock by an action of assumpsit upon his subscription to recover the amount of one or more calls or instalments, less than the full price of the stock, and at the same time a remedy to enforce satisfaction of a future call or instalment, by forfeiture of his stock in respect to that call, without affecting the claim of the company in respect to such prior calls or its remedy for the recovery thereof by action.
It seems to be well settled, and it was not controverted on the argument, that an action of assumpsit lies by the company against a delinquent subscriber upon an express promise to pay the calls upon stock from time to time as they shall be required by the proper authority; although the act of incorporation contains a provision for the sale of the stock to satisfy the calls or for the forfeiture thereof in case of non-payment; (The UnionTurnpike Co. v. Jenkins, 1 Caines' Rep. 301; 1 Caines' Cas.in Error, 95, S.C.; The Goshen Turnpike Co. v. Hurtin, 9John, 217; Dutchess Cotton Manufacturing Co. v. Davis, 14id. 238; Highland Turnpike Co. v. McKean, 11 id. 98;Spear v. Crawford, 14 Wend. 20; Harlæm Canal Co. v.Seixas, 2 Hall, 504; The Worcester Turnpike v. Willard, 5Mass. Rep. 80; The Delaware Schuylkill Canal Co. v.Sansom, 1 Binney, 70; Justom v. Bridge Co. 2 Bibb. 577;Tar River Navigation Co. v. Neal, 3 Hawks, 520.) The supreme court of errors of Connecticut went a step further in the cases of The Hartford New Haven Rail-Road Co. v. Kennedy,
(12 Conn. Rep. 499;) The same v. Boorman, (12 id. 530,) where a corporation was created by the legislature, for the purpose of constructing a rail-road, with the general powers and privileges usually granted to corporations for a similar purpose, with a limited capital, to be divided into shares to be subscribed for by individuals, the directors of the company being by the act authorized to require payment of the sums so subscribed to the capital stock, at such times and in suchproportions, and *Page 344 upon such conditions as they might deem fit; and in case any stockholder should refuse or neglect to make payment pursuant to the requisition of the board of directors, declaring that the stock of such stockholder or so much thereof as should be necessary might be sold by the directors at public auction, after a lapse of six months from the time the payment became due, and providing for the application of the avails of such sales to the payments due and interest thereon and expenses of sale, and the surplus to the stockholder. And the defendant signed a subscription in these words: "We do hereby subscribe to the stock of said railroad the number of shares annexed to our names respectively, on the terms, conditions and limitations mentioned in the charter," paying at the same time five dollars on each share subscribed. In an action of assumpsit brought by the company against a stockholder, to recover certain instalments, required by the directors to be paid, which he had refused or neglected to pay, it was held, 1st. That from the relation of stockholder and company, thus created, a promise by the defendant was implied to pay the instalments in question. 2d. That the remedy provided by the clause authorizing a sale of the stock of delinquent stockholders, was cumulative merely, leaving such promise in full force.
In behalf of the defendant it is insisted that although the company has at the common law a remedy by action of assumpsit against him to recover the price of the stock for which he subscribed, upon his express promise to pay; and a cumulative remedy provided by the act of incorporation, by forfeiting his stock; yet that the company cannot have both. That either when taken covers the whole subject of litigation and necessarily precludes a resort to the other. The general rule is well established, that where a remedy is given by statute in a case where a remedy also exists at common law, the party may take one or the other at his election, and cannot take both. (Clark v.Brown, 18 Wend. 220, and the cases there cited.) Although where two or more remedies by law exist, in a given case resulting from the contract of the parties, each may be pursued at the same time until satisfaction. No question was made on the argument, but that it was competent for the corporation *Page 345 
on the one side and the defendant on the other, to make the contract set out in the pleadings. Whether the company has a right of action by the common law against the defendant to recover one or more of the several proportions of the whole price of the stock subscribed by him, as called for and demanded by the directors of the company of the defendant, he being a stockholder, and also a right at the same time to resort to the statute remedy, by forfeiture of his stock to satisfy other proportions of such price so called for and demanded, subsequently, depends, as it seems to me, upon the true construction of the contract made by the parties and the provisions of the act of incorporation.
As I read the contract, the defendant engaged to purchase and did purchase of the company twenty-one shares of its capital stock at the price of $100 per share, and in consideration thereof agreed with the company to pay that sum, in such proportions or instalments, at such times as should thereafter be required by the directors of the company or their successors, pursuant to the provisions of the act of incorporation, and agreeing that in case of non-payment of any one or more proportions or instalments thereof as required, the company, in addition to the legal remedy by action upon the contract to enforce payment, should have the right and power by a resolution of its directors after thirty days' notice of such requirement, given as prescribed by said act, to cut off all the right and interest which the defendant had acquired in the stock thus purchased and all previous payments by him made thereon, andforfeit it to the said company.
The obligation of the defendant to pay, as well as the right of the company to an action against the defendant to recover any part of the sum subscribed, or to forfeit his stock, was by the contract and the provisions of the charter contingent, depending upon the events of being required by the directors to pay and the non-payment by the defendant on or before the day appointed by the directors for payment, when the right to an action or forfeiture became absolute in the company on the happening of such events. The company in respect to such proportions of the principal sum as were so required to be paid, *Page 346 
had an election of remedies, to obtain satisfaction of such proportions irrespective of the residue of the entire sum subscribed, namely: By suit upon the contract or by forfeiture of the defendant's shares of stock subscribed. It could not have both remedies in respect to a single call or instalment required. Pursuing one necessarily excluded the right to the other, so far and no farther than the call or instalment was the object of the particular proceeding. In regard to any future call both remedies on non-payment would be unaffected in regard to that by a previous action brought by the company to enforce payment of a previous call.
It may be admitted that when the company has taken and perfected its remedy, by forfeiture of the stock of a stockholder, for non-payment of a particular call or instalment, an end is put to all personal liability or obligation on the part of such stockholder, to pay any other proportion of the principal sum which should subsequently be attempted to be required by the directors. As by such forfeiture the relation of stockholder in the company would, from the time of forfeiture, have ceased, and consequently the company, by its own voluntary act, would have deprived itself of the power to make a call for further proportions of the principal sum, so as to affect such person or operate upon his contract: for to affect him or his contract, it is indispensable that such person should be a stockholder at the time when the directors make the call or demand, or at least should not have been deprived of his stock by forfeiture to the company; as otherwise there could be no breach of his contract by non-payment. But although the forfeiture terminated the relation of the defendant as a stockholder, and incapacitated the company to affect the defendant or his contract by any subsequent calls made by the directors, in case the whole sum had not been previously called or demanded; yet it did not in the least affect the then existing rights of the company, or the obligations of the defendant arising upon his contract with the company. We have seen that the defendant agreed to pay the price of his stock, at such times and in such proportions as the same should be called for and demanded of the stockholders by the directors. The several sums for which this suit was brought *Page 347 
to recover, had been called for and demanded of the defendant while he was a stockholder, by the directors, in conformity to the power given to them by the act; and the times appointed for the payment had elapsed and payment neglected or withheld; therefore a breach of the contract on the part of the defendant had occurred, and this suit for that cause had been commenced. At that time the company clearly, and that is conceded by the plea, had a right, at its election, to forfeit the defendant's stock for that cause, or to take its remedy by action for the recovery of said sums. If, then, the right of action in the company was perfect at that time, in respect to the several calls payable on and prior to the first of December, 1834, by what means has that right since been extinguished? The argument is, that the right of the company, as it respects the remedy as well as the obligation of the defendant to pay, is entire not divisible; and when the company has taken effectually, one of the two remedies, by action or forfeiture, although confessedly to satisfy a particular call or instalment, of several made, it operates as a bar to any further remedy for the recovery or satisfaction of any other call, although such call is prior in time to the taking of such remedy, and was not the object sought or acquired by the remedy pursued. It is insisted that the legislature intended to give the company its election, to compel the performance of the contract to take and pay for the stock, by suit, or by forfeiture to rescind the contract, and upon rescission to keep that which had already been paid, by way of penalty for the subscriber's delinquency. I cannot assent to that as the correct construction of the statute, and the rights and obligations of the parties under it. I do not see that a rescission of the contract was contemplated, by the legislature, in the event of a forfeiture. The power to forfeit the shares of stock of delinquent stockholders, obviously was conferred, as a remedy, additional to an action at law, to insure prompt payment of the calls or instalments, designed to operate as an incentive to the stockholder to make payments, and at the same time afford additional facilities to the company to obtain the funds required to effect the object of the incorporation. In my judgment the right of action or forfeiture, as well as the obligation *Page 348 
of the defendant to pay, are divisible, corresponding to the several calls or demands made by the directors. And that it was competent for the company to exact the forfeiture of the defendant's stock for the non-payment of any one or more of such calls, and having done that, the only consequence affecting the rights of the company, at most is a satisfaction of the particular call or calls for the non-payment of which such forfeiture was declared, and a termination of the relation of the defendant as a stockholder in the company, without in the least affecting the right of action which was perfect in the company to recover of the defendant for any calls or instalments previously made, and which had become payable as well by the terms of the contract as the provisions of the statute.
I do not see any analogy between the effect of a forfeiture as to the rights of the parties, contemplated by this statute, and the rights of the mortgagor under a foreclosure, having a right of redemption in equity I am of opinion that the act of forfeiture under this statute, vested the stock forfeitedabsolutely in the company. The case here is, in some respects, analogous in principle to an entry by a lessor for condition broken, where it was said it had the effect to extinguish a covenant to pay rent and the like. But it was adjudged inHartshorn v. Watson, (4 Bingham's N.C 178,) that an action of covenant lies for rent reserved by indenture, and accruingbefore a re-entry for a forfeiture, notwithstanding the lessor under such re-entry was to have the premises again "as if the indenture had never been made," and that the proper construction of the condition was, that from the time of re-entry the lessor should have the land as if the indenture had not been made. And that it would be a singular construction, to hold that to an action for rent on an instrument under seal, the lessee or assignee might plead, not payment, but that the lessor entered for non-payment — in other words, might deprive the lessor of his rent because he declined to submit to any further loss. No doubt such re-entry would, at the common law, work a discharge of the rent from the time it took place. In the case of Hinsdale
v. White, (6 Hill, 507,) the same principle was sustained. There a lessee had been removed from demised premises for non-payment of rent by summary *Page 349 
proceedings under 2 R.S. 512, § 28. It was held that the landlord, notwithstanding, might recover the same rent by action, and that the provision in 2 R.S. 515, § 43, "Whenever a warrant shall be issued as aforesaid, by any such magistrate, for the removal of any tenant from any demised premises, the contract or agreement for the use of the premises, if any such exists, and the relation of landlord and tenant between the parties, shall be deemed to be cancelled and annulled," did not operate in such case to annul the lease from its date, but only from the time of the default for which the warrant issued.
It was argued that the case of Winter v. Livingston, (13John. 54,) could not be distinguished in principle from the case under consideration, and that it was opposed to the decision made by the supreme court in this case. In that case, Winter contracted to convey certain lands to Livingston, for which Livingston gave three promissory notes to Winter. The contract between the parties provided that if the notes, or either of them, should not be paid at the time they became payable, it should be void and of no effect. The notes were not paid; and Winter then sold and conveyed a large part of the land to other persons, and afterwards brought his suit upon the notes. The court said, "The notes in question were given as the consideration for the reconveyance of the land by Winter to Livingston, according to the covenant entered into between them. By this covenant, however, it was provided, that the agreement was to be void, unless Livingston paid his notes as they fell due. He did not pay them, and of course the agreement was void, if Winter elected so to consider it. And the case fully shows that he availed himself of this forfeiture, for he went on and sold the land for his exclusive benefit, and Livingston has, therefore, received nothing for his notes; and Winter has a perfect title to the land."
I think it is a mistake to say, as has been said, that the land in the case cited was sold by Winter, as the shares of the defendant were, by the corporation. In the case of the land, there was an executory agreement on both sides for the sale and purchase of it, containing an express provision, that in case the purchaser omitted to pay the consideration agreed upon, the *Page 350 contract should be void and of no effect, in other words, rescinded. In the case under consideration, the contract was executed on the part of the corporation, the stock sold had been issued and delivered to the purchase, and nothing remained to be done by the corporation to carry the contract into full effect. The title to the shares of stock became vested in the defendant, and the corporation became entitled to secure or collect the price which he contracted to pay therefor. There is no provision in the contract between the parties in this case, that in the event of non-payment of the price, at the time and in the proportions it should be called for, that the contract of sale and purchase should be void. Neither could the corporation rescind the contract so as to entitle itself to the stock, on non-payment by the defendant, there being no fraud alleged in the making of it. In the event of non-payment, the corporation could only pursue such remedies as the statute and common law gave it, to enforce payment or satisfaction of the debt due from the defendant; and although the statute, in connection with the contract, in addition to the ordinary remedy by action, gave a summary method in case of default in payment, by which the corporation was enabled to satisfy, in part or in the whole, its debt, by acquiring the title to the defendant's stock; and although the corporation pursued such remedy, and satisfied a portion of the debt due from the defendant, consequent upon the non-payment of the price at the time and in the manner provided for, as well by the contract as the statute; and though it acquired the title to the stock; the corporation did not acquire the title by avoiding or rescinding the contract, but in its affirmance and by means of the legal remedy provided to enforce its performance on the part of the defendant.
In the case of Winter v. Livingston, the consideration of the notes being the consideration agreed to be paid for the land, failed when the event happened which, by the terms of the contract, was to put an end to it, and the vendor had otherwise disposed of the subject of the bargain. It has been said that the statute, in this case, makes the contract void, at the election of the corporation, on non-payment by the defendant, and that is inferred from the power given to forfeit the stock for such *Page 351 
cause: and it was also said, that it is the same right given by the statute as was provided for by the contract between Winter and Livingston. I am not able to see the resemblance. The statute in no sense provides for making the contract between the corporation and a stockholder void, on non-payment of the price. The power to forfeit the stock for non-payment, given by the statute, is in no sense a power to rescind the contract, or to declare it void — but a power to take a proceeding under it in its affirmance, to enforce it. I think it is a mistake to say, that in the case of Winter v. Livingston, because the vendor had repossessed himself of the land as owner, it was held that the consideration for the notes had failed. The ground upon which the decision in that case was placed, was, that the contract was void by its terms, at the election of Winter, on the non-payment of the notes by Livingston as they fell due. And the fact that the notes were not paid, and that Winter subsequently sold the land for his own benefit, was taken as evidence of his election so to consider it, and consequently the consideration for which the notes were made had failed.
Here, as I have already said, there has been no failure of consideration; no other consequence from non-payment has resulted than might have followed a sale of the shares on execution upon a judgment in favor of the corporation, against the defendant, for the price of the stock, and the corporation had been the purchaser at $10 per share, if the statute had provided such remedy instead of the remedy by forfeiture. I confess that I do not see any analogy in principle between this case and the case of Winter v. Livingston.
In my opinion, the judgment of the court below should be affirmed.
And thereupon the judgment of the supreme court was reversed, and judgment awarded to the plaintiff in error, on the demurrer.¹ *Page 352